# STATE OF MICHIGAN

# COURT OF APPEALS

INGRID HACKETT-MAYER,

           Petitioner-Appellee,

v

FRANK MAYER IV,

           Respondent-Appellant.

UNPUBLISHED
December 18, 2014

No. 317744
Oakland Circuit Court
Family Division
LC No. 2013-807804-PP

Before: O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

      Respondent Frank Mayer IV appeals as of right the trial court's order denying his motion to terminate a personal protection order (PPO) issued against him at the request of petitioner Ingrid Hackett-Mayer. We affirm.

      Initially, we note that although the PPO on which this appeal is based expired on April 25, 2014, the issue is not moot. "As a general rule, an appellate court will not decide moot issues." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id*. However, an issue is not moot where it "may have collateral legal consequences" for an individual. *Mead v Batchlor*, 435 Mich 480, 486; 460 NW2d 493 (1990), abrogated on other grounds *Turner v Rogers*, ⸺ US ⸺; 131 S Ct 2507; 180 L Ed 2d 452 (2011). A PPO may be entered into the Law Enforcement Information Network (LEIN). MCL 600.2950(16) and (17). Although there is no statutory provision providing for the removal of a PPO from the LEIN after a PPO expires, MCL 600.2950(19) and (20) provide that the LIEN must be updated with information that a PPO was "rescinded, modified, or extended by court order." Accordingly, because a legal remedy is attainable, the issue is not automatically moot just because the PPO expired. Further, in this case, respondent testified that he is licensed to work in a heavily regulated business, that the PPO will harm his business reputation, and that he will have to disclose the PPO every year in conjunction with his work. Thus, the expired PPO continues to have adverse consequences to respondent. See *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008) (holding that the trial court's decision to issue and continue a PPO was not moot after the expiration of the PPO because the respondent could permanently lose his federal firearms license and livelihood).

-1-

Respondent argues that the trial court abused its discretion in denying his motion to terminate the PPO because the trial court did not have reasonable cause to believe that respondent committed one of the acts described in MCL 600.2950(1). "We review for an abuse of discretion a trial court's determination whether to issue a PPO because it is an injunctive order." *Hayford*, 279 Mich App at 325. "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Id*. The trial court's findings of fact are reviewed for clear error. *Id*. Issues of statutory interpretation are reviewed de novo. *Id*.

Pursuant to MCL 600.2950(4), a circuit court must issue a PPO if it "determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)." The relevant acts include "(g) [i]nterfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment." MCL 600.2950(1)(g). Further, MCL 600.2950(1)(j), the catchall provision, provides that another relevant act includes "any other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence." The petitioner has the initial burden to show reasonable cause for the trial court to grant a petition for a PPO. *Hayford*, 279 Mich App at 326. The petitioner also has the burden to establish "a justification for the continuance of a PPO at a hearing on the respondent's motion to terminate the PPO." *Id*. In deciding whether to issue a PPO, the trial court must consider "[t]estimony, documents, or other evidence offered in support of the request" for a PPO. MCL 600.2950(4)(a). Further, pursuant to MCL 600.2950(4)(a), the trial court must consider whether the respondent has "previously committed or threatened to commit" an act listed in MCL 600.2950(1).

In this case, the parties divorced in 2007. They shared joint physical and legal custody of their minor children. The parties' post-divorce relationship appears to have been contentious. In April of 2013, petitioner received a number of text messages from respondent, which she generally described as referring to her as

> fat, ugly, a terrible parent, a derelict, I have no parenting skills, why don't I get a job, why don't I attend a career fair; they will go on to say such things as I date a lizard, that I have no business being a parent, I cheated on my husband with a lizard, I should get a job, I should get off drugs.

The text messages that were admitted into evidence also included numerous declarations from respondent that petitioner was a bully and that she needed to stop abusing children. The text messages were apparently sent before and after an April 23, 2013, incident at petitioner's workplace. The testimony established that on April 23, 2013, respondent called petitioner and left a voicemail on her phone before showing up at her workplace. Respondent agreed that when he arrived he "launched into an extremely hostile tirade," but he maintained that he did not threaten anyone. Petitioner testified that when respondent arrived he "slammed his hands" onto the sign-in counter, sending pencils flying and disrupted everything that was on the counter. She said that he started saying "let's go, come on, let's go, let's go find these bullies, Ingrid, come on, let's go." She added that he was "screaming at the top of his lungs." She said that she was very afraid and asked him to leave, but he "kept going on and on" about finding the bullies. Petitioner's coworker described respondent as "very hostile" and said he was "yelling" at

petitioner. She said it was a "bit eerie" because respondent had a laser focus on petitioner. She said that she was scared and frightened by his conduct. Petitioner crouched behind her coworker and called the police, but respondent left before they arrived. Petitioner said that respondent left a second voicemail on her phone after he left. Both voicemails were played on the record, but were not transcribed. However, respondent candidly described at least one of the voicemails as a "volcanic . . . watered down version of Alec Baldwin's infamous voice message." One of the responding police officers testified that petitioner and her coworker were upset, frightened, and emotionally agitated when he arrived; however, the officer said that they told him respondent did not make any verbal threats. Based on this testimony, we conclude that the trial court did not abuse its discretion in denying respondent's motion to terminate the PPO because the trial court had reasonable cause to believe that respondent interfered with petitioner at petitioner's place of employment and engaged in conduct that caused petitioner to experience a reasonable apprehension of violence. MCL 600.2950(4); MCL 600.2950(1)(g) and (j).[1]

Affirmed.

/s/ Peter D. O'Connell
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

---

[1] In addition, the trial court was able to consider a September 2012 incident in determining whether respondent's actions caused petitioner to experience a reasonable apprehension of violence. See MCL 600.2950(4)(b) (providing that a trial court may consider whether the respondent previously committed or threatened to commit an act listed in MCL 600.2950(1)). According to petitioner, respondent slapped her in the face in September of 2012. Respondent points out that the case against him was dismissed because the prosecutor found it improper to go forward. However, the trial court was able to consider the incident even though it did not result in a conviction. See MCL 600.2950(4)(b). Therefore, to the extent that the trial court considered the September 2012 incident in reaching a decision, the trial court did not abuse its discretion.