*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERICA RUTH FISHER,

      Plaintiff-Appellant,

v

CHAKIRA LEKEISH CALCOTE and MARC
ALAN CALCOTE, also known as MARC
CALCOTE,

      Defendants-Appellees

and

AUTO CLUB INSURANCE ASSOCIATION,

      Defendant.

UNPUBLISHED
April 13, 2023

No. 360135
Macomb Circuit Court
LC No. 2021-000370-NI

Before: CAVANAGH, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants Chakira Lekeish Calcote (Chakira) and Marc Calcote (Marc).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On February 2, 2018, plaintiff's vehicle was stopped at a red light when she was rear-ended by vehicle driven by Chakira and owned by Marc. The impact from Chakira's vehicle pushed plaintiff's vehicle into the vehicle in front of her. Chakira's vehicle was insured by Progressive Insurance Company (Progressive). On February 26, 2018, an employee of Progressive, Doug

---

[1] The trial court entered a stipulated order dismissing plaintiff's claims against defendant Auto Club Insurance Association (plaintiff's auto insurer) for uninsured/underinsured motorist coverage. Plaintiff does not appeal that dismissal, and Auto Club Insurance Association is not a party to this appeal.

James, contacted plaintiff by phone on defendants' behalf. According to James, the phone call was to negotiate a settlement of plaintiff's bodily injury claims against defendants. James asserted via affidavit that during the phone call, plaintiff accepted Progressive's offer to send a $1,500 check (hereinafter "the check") as a full and final settlement of plaintiff's claims against defendants. James further stated that he informed plaintiff that Progressive would mail plaintiff the check and an accompanying release of liability for plaintiff to sign. During her deposition, plaintiff testified that, although she spoke with someone from Progressive, that person did not represent that the offer of $1,500 was an offer to settle her claims against defendants.

Progressive subsequently mailed plaintiff the check, a settlement release form, and a document titled: "Advice of Payment." The Advice of Payment contained plaintiff's name and address, Progressive's name and address, the date of loss, and plaintiff's claim number. Additionally, in a section entitled "Description" was printed the phrase "Full and Final Settlement of all Bodily Injury Claims Individually and Jointly." Plaintiff testified that she recalled receiving the Advice of Payment, but did not read the portion indicating that the check was a full and final settlement of her claims. Plaintiff testified that she also received a release document, but did not sign and return that document to Progressive because she was unsure of the extent of her injuries. James also stated in his affidavit that plaintiff never returned a signed release.

In March 2018, plaintiff cashed the check and deposited the funds in her bank account. In February 2021, plaintiff filed suit against defendants, alleging that Chakira had negligently operated her vehicle in violation of the Michigan Motor Vehicle Code, MCL 257.1 *et seq*., and alleging ownership liability against Marc. Defendants denied the allegations of negligence. Relevant to this appeal, defendants asserted as affirmative defenses that plaintiff's claims may be barred by release, payment, assignment, discharges, laches, estoppel, or waiver.

In September 2021, defendants moved for summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(10), claiming that plaintiff's acceptance of the check constituted a valid accord and satisfaction barring plaintiff's claims against defendants. Defendants claimed that the elements of accord and satisfaction were met because: (1) there was a good faith dispute regarding plaintiff's damages; (2) at the time of settlement plaintiff's damages were unliquidated; (3) the check, tendered to plaintiff, clearly indicated it was a full and final settlement of plaintiff's claims; and (4) plaintiff had accepted Progressive's settlement offer by cashing the check. Defendants also submitted evidence that plaintiff had previously received a similar check from Progressive after an unrelated motor vehicle accident in 2017. In the litigation arising from that accident, the trial court had granted the defendant's motion for summary disposition because an accord and settlement had been established, thereby barring plaintiff's claims against the defendant. Defendants argued that because plaintiff had been through similar litigation, plaintiff was aware that the check in this case similarly constituted a valid settlement.

Plaintiff responded, arguing that plaintiff's claims were not barred because the check, whether standing alone or read together with the Advice of Payment, did not contain language sufficient to establish an accord and satisfaction. Further, plaintiff argued that her deposition testimony clearly showed that she had no intention to release her claims against defendants and enter into a settlement with Progressive. Plaintiff also asked the trial court to enter an order compelling Progressive to produce a transcript of the February 2018 phone call with James under MCR 2.302(B)(3)(a). Specifically, because plaintiff's testimony regarding the nature of the

February 2018 phone call conflicted with the affidavit from James, plaintiff argued that the transcript was necessary to corroborate her testimony that no accord and satisfaction was created. Finally, plaintiff argued that if the trial court found an accord and satisfaction, it arose because plaintiff was fraudulently induced to cash the check.

At the motion hearing, the trial court questioned defendants regarding the existence of a transcript of the February 2018 phone call between Progressive and plaintiff. Defense counsel indicated that no transcript existed and stated that this fact had been communicated to plaintiff. At the end of the hearing, plaintiff's counsel represented that he would submit an order indicating that the transcript did not exist and acknowledged the issue was a moot point. That same day, the trial court entered an order denying defendants' motion for summary disposition without prejudice on the ground that defendants had failed to prove that the documentation accompanying the check had clearly communicated that it was a total settlement of plaintiff's claims rather than payment for expenses, as plaintiff claimed.

In December 2021, defendants filed a renewed motion for summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(10), again arguing that the language contained in the Advice of Payment was sufficient to create a valid accord and satisfaction when plaintiff cashed the check. The trial court granted defendants' renewed motion for summary disposition, finding that while the check itself did not contain language indicating that it was a full and final settlement of plaintiff's claim, the Advice of Payment accompanying the check was adequate to create a valid accord and satisfaction. This appeal followed.

## II.  STANDARD OF REVIEW

Defendant moved for summary disposition under both MCR 2.116(C)(7) and MCR 2.116(C)(10). However, the written order granting defendants' motion for summary disposition does not explicitly state under which subrule the motion had been granted.

We review de novo a trial court's decision to grant or deny summary disposition under MCR 2.116(C)(7). *Roby v City of Mount Clemens*, 274 Mich App 26, 28; 731 NW2d 494 (2006). "MCR 2.116(C)(7) permits summary disposition where the claim is barred because of release, payment . . . or other disposition of the claim before commencement of the action." *Maiden v Rozwood*, 461 Mich 109, 118 n 3; 597 NW2d 817 (1999) (quotation marks omitted). "When reviewing a motion under MCR 2.116(C)(7), a reviewing court must consider all affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings and evidence in favor of the nonmoving party." *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011) (citation omitted). "Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Maiden*, 461 Mich at 119.

> If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred is an issue of law for the court. But if a question of fact exists so that factual development could provide a basis for recovery, caselaw states that dismissal without further factual

development is inappropriate. [*Dextrom v Wexford County*, 287 Mich App 406, 431; 789 NW2d 211 (2010).]

We also review de novo a trial court's decision concerning a motion for summary disposition under MCR 2.116(C)(10). *Maiden*, 461 Mich at 118. "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. . . . Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. at 119-120.

> [W]hen reviewing a motion for summary disposition brought under MCR 2.116(C)(10), the court must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. If the court does determine that a genuine issue of material fact exists, then the motion must be denied and the issues are left to a fact-finder to resolve at a trial. [*Dextrom*, 287 Mich App at 430.]

We review de novo issues concerning the construction and interpretation of a contract. *Shay v Aldrich*, 487 Mich 648, 656; 790 NW2d 629 (2010). We also review de novo the applicability of equitable doctrines. *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013).

We review for an abuse of discretion a trial court's decision to grant or deny a discovery request. *Mercy Mount Clemens Corp v Auto Club Ins Ass'n*, 219 Mich App 46, 50-51; 555 NW2d 871 (1996). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006). This Court reviews de novo whether an issue is moot, *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016), and generally does not decide moot issues. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id*. "A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy." *Garrett*, 314 Mich App at 449 (quotation marks and citation omitted).

## III. ACCORD AND SATISFACTION

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendants because there is, at the very least, a genuine issue of material fact whether an accord and satisfaction was created. We disagree.

"Accord and satisfaction is based on contract principles and is generally contractual in nature. An 'accord' is an agreement between parties to give and accept, in settlement of a claim or previous agreement, something other than that which is claimed to be due, and 'satisfaction' is the performance or execution of the new agreement. *Nationwide Mut Ins Co v Quality Builders, Inc*, 192 Mich App 643, 646; 482 NW2d 474 (1992). Our Supreme Court has held that Article 3 of Michigan's Uniform Commercial Code (UCC) controls "all accord[s] and satisfactions involving a negotiable instrument," such as a check. *Hoerstman Gen Contr, Inc v Hahn*, 474 Mich 66, 75-76; 711 NW2d 340 (2006). Specifically, MCL 440.3311, entitled "Accord and satisfaction by use of instrument" states, in relevant part:

(1) If a person against whom a claim is asserted proves that (*i*) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (*ii*) the amount of the claim was unliquidated or subject to a bona fide dispute, and (*iii*) the claimant obtained payment of the instrument, the following subsections apply.

(2) Unless subsection (3) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

\* \* \*

(4) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim. [MCL 440.3311(1), (2) and (4).]

To meet the first requirement of MCL 440.3311(1), defendants must have made a good-faith tender to the plaintiff as full satisfaction of plaintiff's claims. MCL 440.3311(1)(*i*). Good faith is defined as: "honesty in fact and the observance of reasonable commercial standards of fair dealing." *Hoerstman*, 474 Mich at 76. Plaintiff's testimony and James's demonstrate that Progressive tendered the check to plaintiff as full satisfaction of plaintiff's claims. Although plaintiff testified that she did not recall James specifically offering to settle her claims for the amount of the check, she admits to receiving a release document and the Advice of Payment, which contained the statement that the check was in full satisfaction of plaintiff's claims for bodily injury. We therefore conclude that this factor is satisfied.

To meet the second requirement of MCL 440.3311(1), plaintiff's claim must be unliquidated or subject to a bona fide dispute. MCL 440.3311(1)(*ii*). An unliquidated claim is defined as "a claim in which the liability of the party or the amount of the claim is in dispute." *Hoerstman*, 474 Mich at 76-77. Plaintiff does dispute that her claim was unliquidated, and the record shows that defendant's liability and the amount of damages suffered by plaintiff were matters of bona fide dispute; in fact, plaintiff testified that she was unaware of the full extent of her injuries when she spoke with James about the check. We therefore conclude that this factor is satisfied.

To meet the third requirement of an accord and satisfaction, plaintiff must have obtained payment of the instrument. MCL 440.3311(1)(*iii*). Plaintiff admits that she received the check, the Advice of Payment and the release, and that she subsequently cashed the check. This factor is therefore satisfied.

Notwithstanding the above, plaintiff argues that there was, at least, a genuine issue of material fact concerning whether her claim was discharged. We disagree.

Once the first three requirements are satisfied, the question becomes whether the claim was discharged. Under the statute, there are two ways to

discharge a claim. According to MCL 440.3311(2), a claim is discharged if the instrument, or an accompanying written communication, contains a conspicuous statement that the tender is in full satisfaction of the claim. Second, under MCL 440.3311(4), a claim is discharged if the claimant, or the claimant's agent, knew that the defendant tendered the instrument in full satisfaction of the claim. [*Hoerstman*, 474 Mich at 78.][2]

Plaintiff claims that the check and the accompanying Advice of Payment are insufficient to establish an accord and satisfaction. Further, plaintiff claims there is no accord and satisfaction because there was no "meeting of the minds" in that plaintiff did not know or intend that the check would serve as a settlement of her claims. Plaintiff's arguments are contrary to the UCC.

MCL 440.3311(2) states that an instrument discharges a claim if "the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." MCL 440.3311(2). MCL 440.1201 defines "conspicuous" as follows:

(j) "Conspicuous", with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include any of the following:

(*i*) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to surrounding text of the same or lesser size.

(*ii*) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language. [MCL 440.1201(j)(*i*), (*ii*).]

Plaintiff is correct that the check itself contains no language indicating that it is a full and final settlement of plaintiff's claims. However, MCL 440.3311(2) explicitly states that a claim can be validly discharged if it is accompanied by a written communication with a conspicuous statement that the tender is in full satisfaction of the claim. MCL 440.3311(2). We conclude that the Advice of Payment contained such a conspicuous statement.

The body of the Advice of Payment contains a section titled "Details." Beneath the "Details" heading, there is a subheading titled "Description." Beneath that subheading is the statement: "Full and Final Settlement of all Bodily Injury Claims Individually and Jointly." While the statement is not demarcated from the surrounding text by use of a different font or color, the statement is enclosed in its own boxed-in section, separate and distinct from the other subheadings surrounding it. We conclude that the statement in the Advice of Payment was "set off from surrounding text by symbols or other marks" such that a reasonable person ought to have noticed

---

[2] MCL 440.3311(3) provides two exceptions to MCL 440.3311(2), however, neither of the exceptions applies in this circumstance.

it, and therefore meets the definition of "conspicuous" under MCL 440.1201(j). See *Hoerstman*, 474 Mich at 79-80.

Further, the Advice of Payment contains sufficiently detailed language to satisfy MCL 440.3311(2). In *Nationwide Mut Ins Co*, 192 Mich App at 649-650, this Court found that the language contained in a check issued to the plaintiff was insufficient to communicate that the check was intended to be a full and final settlement of the plaintiff's claims. The check in *Nationwide* simply stated: "Paid in Full." *Id*. at 648. Further, the check was accompanied by a letter stating: "This pays my account with Nationwide in full." *Id*. at 649. In finding the check and accompanying letter insufficient to create an accord and satisfaction, this Court noted that "the language used . . . could as easily be understood to mean that defendant believed he owed no more than the amount tendered with no accord and satisfaction implied." *Id*. at 650.

In this case, the Advice of Payment contained plaintiff's name and address, Progressive's name and address, the date of loss, plaintiff's claim number, and a statement indicating the check was a "Full and Final Settlement of all Bodily Injury Claims Individually and Jointly." Unlike the check and accompanying letter in *Nationwide*, the Advice of Payment contains an explicit statement that the payment is a full and final settlement of plaintiff's claims. And although the check did not identify defendants by name, plaintiff was informed during the February 2018 phone call with Progressive that Progressive was calling on behalf of defendants. Because the Advice of Payment accompanying the check contains sufficient information to discharge plaintiff's claim under MCL 440.3311(2), the trial court did not err by finding that an accord and satisfaction had been created.

## IV. FRAUD IN THE INDUCEMENT

In the event we find a valid accord and satisfaction, which we do, plaintiff argues that we should declare the accord and satisfaction voidable because it was fraudulently induced. We disagree.

Fraud in the inducement occurs when a party materially misrepresents future conduct and the other party reasonably relies upon the misrepresentation. *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 242-243; 733 NW2d 102 (2006). "Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party." *Id*. at 243 (citation omitted). To prove fraud in the inducement, a plaintiff must show:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 499; 892 NW2d 467 (2016) (citations omitted).]

"Fraudulent inducement must be proved by clear and convincing evidence. Plaintiff [can]not merely rest on the allegations in his complaint. Instead, to survive summary disposition, plaintiff [is] required to adduce substantively admissible evidence to support each of the essential elements

of his fraud-in-the-inducement theory." *Smith Living Trust v Erickson Retirement Communities*, 326 Mich App 366, 386; 928 NW2d 227 (2018) (citations omitted). "There can be no fraud where a person has the means to determine that a representation is not true." *1031 Lapeer LLC v Rice*, 290 Mich App 225, 237; 810 NW2d 293 (2010) (citation omitted).

Plaintiff claims she was fraudulently induced to cash the check because: (1) Progressive made a material representation that the check was not a settlement; rather, it was meant to assist plaintiff with expenses related to her motor vehicle accident; (2) this representation was false because the check was actually a full and final settlement of plaintiff's claims against defendants; (3) when Progressive made this representation, it knew the check was a settlement and was intentionally vague and deceitful; (4) Progressive made the representation with the intent that plaintiff would cash the check and settle her claims; and (5) plaintiff relied on Progressive's representations and cashed the check. Plaintiff asserts that Progressive made a material, false representation because it told her that the check was for expenses related to the accident. However, James's affidavit indicates that he negotiated the settlement with plaintiff during February 2018 phone call. Although plaintiff's testimony conflicts with this evidence, plaintiff did not testify that she was affirmatively told that the check was for expenses and not a settlement; rather, she stated: "They told me they were giving me $1,500 because of me being in the accident. They didn't say it was a settlement. . . . They told me it was because I was in an accident and they know that, you know, things come up when you're in an accident. They just want to give me something for it because I was in the accident. They didn't say it was a settlement." Plaintiff also admitted to being sent a release document along with the check. Even viewed in the light most favorable to plaintiff, plaintiff has not established, by clear and convincing evidence, that Progressive intentionally made a false representation. *Smith Living Trust*, 326 Mich App at 386; see also *In re Conservatorship of Bittner*, 312 Mich App 227, 237; 879 NW2d 269 (2015) (noting that the clear and convincing evidence standard is "the most demanding standard applied in civil cases" and that clear and convincing proof "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.") (quotation marks and citations omitted; alterations in original). Consequently, plaintiff's claim of fraudulent inducement fails. *Id.*

## V. TRANSCRIPT OF FEBRUARY 2018 PHONE CALL

Plaintiff argues the trial court's failure to order defendants to produce a transcript of the February 2018 phone call between plaintiff and Progressive was error that requires reversal. We disagree.

In general, intentionally and voluntarily relinquishing a known right effectuates a waiver. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 379; 666 NW2d 251 (2003) (citation omitted). "It is well settled that a course of affirmative conduct, particularly coupled with oral or written representations, can amount to waiver." *Id.* (citation omitted). "A party who expressly agrees with an issue in the trial court cannot then take a contrary position on appeal." *Grant v AAA Michigan/Wisconsin, Inc*, 272 Mich App 142, 148; 724 NW2d 498 (2006) (citations omitted).

In this case, during the October 2021 summary disposition hearing, the trial court explicitly addressed plaintiff's motion to compel production of a transcript of the February 2018 phone call between James and plaintiff. In response, defendants denied the existence of a transcript. Although plaintiff questioned defendants' contention that no transcript existed, plaintiff conceded the issue, stating: "I'll submit an order indicating that it does not exist, and I guess that makes that a moot point." Because plaintiff's concession constitutes a waiver, she cannot now assert the trial court erred by failing to compel defendants to produce a transcript that the parties agreed does not exist. See *Grant*, 272 Mich App at 148; *Bureau of State Lottery*, 231 Mich App at 359. Therefore, the trial court did not abuse its discretion by not entering an order compelling defendants to produce a transcript of the 2018 phone call.

We affirm.


/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra
/s/ Michael J. Riordan